IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>FINISAR CORPORATION,<br><br>    Defendant.<br>                                                           / | No. C 06-04206 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

In this action for a declaration of patent invalidity and noninfringement, defendant Finisar Corporation moves to dismiss plaintiff Comcast Cable Communications Corporation's action on the ground that this Court lacks subject-matter jurisdiction. This order finds that plaintiff has a reasonable apprehension of suit by defendant Finisar and that it would be inappropriate to decline jurisdiction. Accordingly, defendant's motion is **DENIED**.

## STATEMENT

U.S. Patent No. 5,404,505 ("the '505 patent"), entitled "System for Scheduling Transmission of Indexed and Requested Database Tiers On Demand At Varying Repetition Rates," concerns the transmittal and broadcast of digital information to a wide base of subscribers. The patent is owned by defendant Finisar.

Plaintiff Comcast was initially approached by defendant Finisar in February 2005. An attorney representing Finisar, John T. Gallagher, sent a letter to Comcast's general counsel

advising that Finisar was the owner of the '505 patent, Finisar was prepared "to take all steps necessary under U.S. patent law to protect its proprietary rights," and that Comcast should consider the patent closely (Exh. 1). Comcast replied approximately one week later via a short letter stating that it would review Finisar's patent and would reply only once it had done so. Four months later, Mr. Gallagher sent another letter to Comcast alerting Comcast that Finisar was "prepared to meet" and "discuss the '505 patent and its relation to your company's operational systems" (Exh. 3). About seven weeks later, Comcast replied to this second letter from Finisar. Comcast's second reply was practically identical to its first, stating that it was reviewing the '505 patent and would be in touch once it completed its review.

There were no subsequent communications until June 2006. In June 2006, defendant Finisar sent plaintiff Comcast a third letter. This letter reiterated earlier offers to extend a license to Comcast but it went a step further. The June 2006 letter directed the reader to a recent jury verdict in a suit filed by Finisar "finding the '505 patent valid and infringed by DirecTV" (Exh. 5). The letter also advised that the jury awarded approximately seventy-nine million dollars in past damages in *Finisar Corp. v. DirecTV Group Inc.* Nine days later, on July 7, 2006, plaintiff Comcast filed this declaratory-judgment action.

In its complaint, plaintiff Comcast seeks a declaratory judgment of noninfringement and a declaratory judgment preventing defendant Finisar from claiming any construction of the '505 patent that would cover plaintiff's activities. Plaintiff additionally alleges that defendant Finisar's patent is invalid and seeks a declaratory judgment to that effect. Lastly, plaintiff Comcast seeks an injunction against defendant Finisar.

Defendant Finisar now moves to dismiss plaintiff Comcast's claim arguing that there is no federal subject-matter jurisdiction, allegedly because plaintiff Comcast has no reasonable apprehension of suit.

**ANALYSIS**

**1.  THERE IS AN ACTUAL CONTROVERSY.**

In order to bring an action seeking declaratory judgment, an actual case or controversy must exist as the Declaratory Judgment Act requires. 28 U.S.C. 2201; *Shell Oil Co. v. Amoco*

2

*Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41 (1937)). The Act's requirement of an actual controversy parallels the requirements of Article III of the Constitution. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996). The Federal Circuit has established a two-part inquiry to determine whether or not there is an actual case or controversy in a patent action:

> Under that test, there must be both (1) an explicit threat or other action by the patentee which creates a *reasonable apprehension* on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) *present activity* by the declaratory judgment plaintiff *which could constitute infringement*, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity.

*Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1330 (Fed. Cir. 2005) (emphasis added). The test is an objective one, and plaintiff bears the burden to establish its reasonable apprehension of suit by a preponderance of the evidence. *Shell Oil*, 940 F.2d at 888. In order for an actual controversy to be present, both prongs must be satisfied. "The first prong looks to the patentholder's conduct, and the second prong looks to the potential infringer's conduct." *Sierra Applied Scis., Inc. v. Advanced Energy Indus.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004).

### A.   Reasonable Apprehension of Suit.

The reasonable apprehension of suit inquiry is an objective one that asks whether the alleged infringer reasonably believed the patentee would sue for infringement. Reasonable apprehension of suit does not require any magic words. "[S]uch apprehension may be induced by subtler conduct if that conduct rises to a level sufficient to indicate an intent on the part of the patentee to enforce its patent." An offer of license alone or a proposal for negotiations is insufficient to establish a reasonable apprehension of suit; the threat of enforcement is the core of the patentee's bargaining power. A reasonable apprehension of suit must necessarily involve more than proposed negotiations but does not require an express charge that patentee plans to sue for infringement of its patent. *EMC Corp.*, 89 F.3d at 811.[1]

---

[1] Like *EMC Corp.*, the third factor discussed in that decision is not applicable here as it is reserved for cases where "it was the declaratory judgment plaintiff, not the patentee-defendant, who first approached the opposing party." *EMC Corp.*, 89 F.3d at 812.

3

The crucial inquiry here turns on whether the conduct of defendant Finisar was the *subtler conduct* the Federal Circuit referred to in *EMC Corp*. When there is no express charge of infringement, the court must look to the "totality of the circumstances." *Shell Oil*, 970 F.2d at 888. Here, defendant Finisar was involved in litigation over this *very same* patent, and even directed plaintiff Comcast to look at the jury verdict in *Finisar Corp. v. DirecTV Group Inc*. It was not until defendant Finisar directed plaintiff Comcast to this verdict that plaintiff Comcast filed suit. In *Finisar Corp. v. DirecTV Group Inc*., a jury had already found the '505 patent valid and infringed. The letter also pointed its reader to the staggering amount of damages in the verdict. This information was sufficient to place plaintiff in reasonable apprehension of suit. While Finisar should not be punished for what it did not say in its letters, it also should not be rewarded for carefully phrased letters that do not include the fatal words regarding patent infringement but imply the same litigious message. Furthermore, as examined in *EMC Corp.*, Finisar is not a "quiescent patent owner." Finisar instigated these interactions with its letters, and has on more than one occasion pursued lawsuits to protect its patents. Rather, this is a situation for a declaratory-judgment action as unwanted litigation is not being forced upon an inactive patent owner. *EMC Corp*., 89 F.3d at 812.

Furthermore, defendant Finisar touted its enforcement strategy in a press release dated April 6, 2005 (Opp. Exh. A). Finisar's press release stated that "Finisar repeatedly contacted DirecTV about its infringement of the '505 patent throughout 2004 and early 2005, indicating its willingness to engage DirecTV in licensing discussions, but Finisar's requests to begin a dialog on the matter were not successful." Plaintiff Comcast saw the writing on the wall. Comcast was reasonably afraid that its failure would result in similar proceedings against it. In light of these circumstances, plaintiff Comcast has a reasonable apprehension that defendant Finisar will seek to enforce the '505 patent in an infringement suit.[2]

---

[2] Movant seeks to rely on *Fresenius USA, Inc. v. Transonic Systems, Inc.*, 207 F.Supp. 2d 1009 (N.D. Cal. 2001) in its argument that plaintiff did not have a reasonable apprehension of suit, and that the letters were simply invitations to negotiate. In addition to not being controlling, *Fresenius* involves different facts where there were ongoing negotiations and "[t]he single letter from Transonic was insufficient to create an actual controversy." *Id.* at 1011.

4

The parties dispute whether the pending Supreme Court case *Medimmune, Inc. v. Genetench, Inc.* will be dispositive of this motion.  In this Court's judgment, a relaxation of the Federal Circuit test by the Supreme Court would only strengthen the holding herein.  The suit is proper even under the Federal Circuit's current test.

### B.  Present Infringement.

"All that the second prong requires . . . is a showing that plaintiff's conduct evidence[s] a real interest in an activity that *may*, potentially, be enjoined." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 738 (Fed. Cir. 1988).  Activity inducing infringement is sufficient to satisfy this prong.  *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485 (Fed. Cir. 1998).

Here, plaintiff Comcast is involved in media communications.  Defendant's patent involves the transmittal and broadcast of digital information.  The second prong has been satisfied because plaintiff is involved in activity that could constitute infringement, especially in light of the allegedly broad construction of the '505 patent in the DirecTV jury verdict.

### 2.  THIS COURT WILL NOT ABSTAIN.

Because this Court finds that there is an actual controversy, it must decide whether it is appropriate to decline jurisdiction here.  In deciding whether to abstain from exercising jurisdiction, "[i]t is appropriate . . . for a district court to examine whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created." *EMC Corp. v. Norand Corp.*, 89 F.3d at 814.  While declining jurisdiction is proper when extrajudicial dispute resolution can be achieved, the Act was created so that "competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Id.* at 815 (citing *Arrowhead*, 846 F.2d at 735).  "The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.  It accommodates the practical situation wherein the interests of one side to the dispute may be

served by delay in taking legal action." *Ibid.* (citing *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)).

## CONCLUSION

For the reasons cited above, defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 9, 2006.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE