IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COMCAST CABLE COMMUNICATIONS
CORPORATION, LLC, a Pennsylvania
Corporation,

    Plaintiff,

  v.

FINISAR CORPORATION, a Delaware
Corporation,

    Defendant.
                                    /

No. C 06-04206 WHA

**ORDER DENYING STAY
AND REQUIRING
COMCAST TO PRODUCE
CERTAIN RECORDS**

       Nine months ago, Comcast Cable Communications Corporation, LLC, sought the protection of the Court's declaratory-relief jurisdiction, seeking a determination that its cable system does not infringe the patent in suit, a patent owned by defendant Finisar Corporation. We have now had five hearings in the case, including a *Markman* hearing. A claim construction order will be filed soon.

       Based on the PTO's grants of two reexaminations concerning the patent in suit, Finisar has made the instant motion to stay all proceedings. At first, Comcast strongly opposed the stay, arguing, among other things, that the claim construction effort would go to waste were the case stayed. After Finisar pointed out, however, that Comcast had yet produced no documents in discovery and after the Court then inquired why Comcast should not be required to produce

1 documents sufficient to assess infringement, Comcast reversed course and joined in the request
2 for a stay. For the reasons below, Comcast's original opposition was more persuasive.*

3 The Court, of course, recognizes the possible benefits of a stay. Conceivably, the
4 reexaminations might result in a narrowing of a claim in suit. In the Court's experience, this is
5 plausible but not likely, at least not likely to make an important difference. It is also
6 conceivable that an entire claim could be cancelled. This, in the Court's experience, is even
7 less likely. The chance that all claims in suit would evaporate is nonexistent as a practical
8 matter, even before considering that some claims in suit will not be covered by the
9 reexaminations.

10 We must remember that validity of the claims in suit has already been tested and held
11 valid in the Texas action, involving as well the same prior-art references. The PTO statistics
12 cited by counsel roll together all reexaminations and do not focus on the subset of all patents
13 already vetted through a full proceeding in district court. This does not mean our jury will
14 agree with the Texas jury. It does, however, reduce the applicability of the gross statistics.

15 As here, reexaminations can be filed by strangers to the litigation (or by the litigants
16 themselves) at seemingly random moments over the span of patent litigation. If litigation were
17 stayed every time a claim in suit undergoes reexamination, federal infringement actions would
18 be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.
19 From a case management perspective, the possible benefits must be weighed in each instance
20 against the possible drawbacks.

21 Had this motion been made back when Finisar first learned that the reexamination was
22 under consideration or even when it learned that it had been granted, the calculus might have

---

* The second reexamination is so similar to the first that it is hard to see why it might have caused Comcast to reverse field. Both reexaminations involve claims 1, 2, 7, 9–11, 16, 17, 22, 24–26, 37, and 39. The second request adds only claim 44, which is not at issue in this action. The two requests identify different prior-art references, but the references themselves disclose similar systems. The references cited by the first request disclose a videotex system that transfers digitally-encoded information via cable, satellite, and telephone to subscribers. In the second request, one new reference discloses teletext systems for facilitating the recording of television programs to subscribers' VCRs. Another discloses a media broadcast system that uses one-way broadcasting and two-way communications to deliver digital information to customers. All these references come from the same technical field and employ some of the same techniques.

been different. But as Comcast observes (Br. 6), the Court has invested a large amount of time in preparing a claim construction ruling. We are nine months into the case and eleven months from trial.

Significantly, the parties are on the verge of producing documents after much preparation to do so. Finisar, to its credit, has already produced some 30,000 pages of documents. To wring some good from this preparation, Comcast should promptly produce for inspection and copying all manuals, schematics, software and other documents needed to determine whether the Comcast system meets any and all of the limitations of the claims in suit, taking into account the claim construction order and taking into account, as to any other phrases in dispute, the competing constructions. Even if the case is eventually stayed, discovery will advance the goal of informing counsel of the merits. This may well lead to a negotiated license and end the controversy altogether. Given what has occurred to date, it would be wasteful to simply stay the case and wait years before trying to ramp up again.

We have much work to do in this case that will need to be done regardless of any probable outcome in the reexaminations. Conceivably, as we approach trial, the calculus will shift in favor of a stay, particularly if the Texas appeal is nearing a decision, but for now the best course is to reap the benefits of the preparation invested to date, both on claim construction and on discovery.

Counsel have cited to various factors taken into account by other district judges in deciding whether to grant stays. Those factors do not neatly address the case management concerns most pertinent here, namely the large investment in the unfinished claim construction process and the large investment in preparation to produce a mass of documents, most of which work would have to be reduplicated later were a stay now granted. And, we are on the verge of discovery sufficient for counsel to master the merits and possibly to negotiate a license, an opportunity that would be wasted by a stay. For the foregoing reasons, the motion to stay is **DENIED**.

When an accused infringer seeks the protection of the Court's declaratory relief jurisdiction, it should be quick to open its files, saying, "See, we do not infringe." It should not

fold its arms and say, "Now that we have outmaneuvered you and anchored our dispute in a venue of our choice, we will go very slow in letting you see our files." This case has been pending nine months. While Comcast claims to have spent millions preparing to produce its records, the sad fact is that it had not yet produced a single page until the hearing on this motion (April 25). This is not in keeping with the obligations of a declaratory-relief plaintiff. The Court will presume that Comcast filed this action for sincere reasons and not simply to avoid a Texas venue. The considerable talents of its counsel should be devoted to getting the job done of producing the necessary records rather than composing long lists of why it cannot be done.

Without prejudice to other discovery requests, Comcast must produce by **NOON ON APRIL 20, 2007**, all manuals, schematics, software and other documents necessary to explain how the Comcast system works with respect to each of the limitations of all claims in suit. The production shall be in the traditional hard-copy format. All materials shall be for attorney's eyes only until such as a formal protective order is entered. Please do not ask for any extensions. All other discovery shall go forward promptly.

**IT IS SO ORDERED.**

Dated: April 5, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4